IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: SUBPONEAS ISSUED TO LABATT FOOD SERVICE, LLC AND BLAIR LABATT | § § § § § | SA-21-MC-01242-XR |

## ORDER

On this date, the Court considered, (1) Labatt Food Service, LLC's ("Labatt") Amended Motion to Quash Subpoena to Produce Documents (ECF No. 2), the Commercial and Institutional Indirect Purchaser Plaintiffs' ("Plaintiffs" or "CIIPPs") response (ECF No. 10), and Labatt's reply (ECF No. 15); (2) Plaintiffs' Motion to Transfer (ECF No. 6), Labatt's response (ECF No. 13), and Plaintiffs' reply (ECF No. 16); and (3) Plaintiffs' Motion to Compel Labatt to Comply with Subpoena (ECF No. 14), and Labatt's response (ECF No. 18). After careful consideration, the Court issues the following order.

## BACKGROUND

The underlying litigation from which the challenged subpoena arose is a complex antitrust class action involving the production and sale of turkey products, *In Re Turkey Antitrust Litigation*, No. 1:19-CV-08318 (the "Underlying Suit"), which has been pending in the Northern District of Illinois since 2019. Plaintiffs are commercial and institutional indirect purchasers of turkey, such as restaurants and caterers. Their complaint alleges that the nation's leading turkey suppliers, aided by a corporate intelligence firm acting as an intermediary, conspired to fix, raise, maintain, and stabilize the price of turkey from at least 2010 to the present.

At class certification, CIIPPs will be required to demonstrate that their damages are calculable on a class-wide basis. That includes demonstrating an overcharge on the price of turkey sold by the defendants to direct purchasers, such as Labatt, and then measuring pass-through of that overcharge to CIIPPs. Precedent provides that CIIPPs can make this showing, in part, by using data from participants in the distribution channel in regressions that measure the level of pass-through (the term of art used to describe the passing through of some or all of the overcharge from the direct purchaser level down to the indirect purchaser or consumer level). In an effort to gather evidence to support their allegations of the conspiracy's nationwide effect on turkey prices, CIIPPs have issued subpoenas to approximately eighty food distributors across the country requesting structured transactional data. In addition to CIIPPs, other groups of plaintiffs, as well as defendants, are also issuing subpoenas to third parties to obtain similar transactional data.

On November 16, 2021, Labatt, a food distributor based in San Antonio, was served with a relevant third-party subpoena seeking six categories of documents and data reflecting Labatt's analysis of competition in the turkey market and detailed transactional data for all of Labatt's turkey purchases and sales dating back to January 1, 2005. *See* ECF No. 2 at 33–39. Labatt filed a motion to quash CIIPPSs' subpoena on December 15, 2021, followed by an amended motion on December 27, 2021. *See* ECF Nos. 1, 2.

During the meet and confer process, Plaintiffs agreed to significantly narrow the scope of the subpoena to two categories of documents and data—transactional data for purchases and sales of turkey since 2005. Labatt agreed to produce the relevant purchase information, but only *some* of the relevant sales data, including the "customer specific allowances" or "deviations" offered by the manufacturers and a stipulation that "it passes on all manufacturer price increases" and thus does not "absorb" any such price increases from turkey producers. ECF No. 15 at 4–5.

On March 11, 2022, Plaintiffs filed a motion to transfer Labatt's motion to quash to the Northern District of Illinois, the issuing court, pursuant to Rule 45 of the Federal Rules of Civil Procedure. ECF No. 6. On March 21, Plaintiffs filed a motion to compel Labatt to comply with the subpoena, arguing that Labatt's transactional data, documenting both purchase *and* sales transactions for turkey, is critical to measure pass-through to the CIIPP class and thus the proof of CIIPPs' claims. ECF No. 14. The Court held a hearing on all pending motions on March 30, 2022.

## DISCUSSION

**I.     Motion to Transfer**

Rule 45(f) governs transfer of a subpoena-related motion. Rule 45 has long required that disputes related to non-party subpoenas be resolved locally "to avoid imposing undue travel or expense burdens on non-parties who are challenging a subpoena." *Visionworks of Am., Inc. v. Johnson & Johnson Vision Care, Inc.*, No. 1:17–MC–0055–LY–AWA, 2017 WL 1611915, at *1–3 (W.D. Tex. Apr. 27, 2017) (citing FED. R. CIV. P. 45(d)(2)(B)(i), directing that motions to compel be filed in "the district in which compliance is required"). Subsection (f) was added in December 2013 to allow the transfer of such motions to the court that issued the subpoena "if the person subject to the subpoena consents or if the court finds exceptional circumstances" to be present. FED. R. CIV. P. 45(f). "[T]he proponent of transfer bears the burden of showing that such circumstances are present." *Id.*, advisory committee notes (2013 amendments).

Although the term "exceptional circumstances" is not defined in the Rule, the Advisory Committee's comments to the amendment explain that "transfer to the court where the action is pending is sometimes warranted" where the interests in having the issuing court decide the discovery dispute "outweigh the interests of the party served with the subpoena in obtaining local resolution of the motion." FED. R. CIV. P. 45 advisory committee's notes to 2013 amendment,

Subdivision (f). The Committee further notes that "transfer may be warranted in order to avoid disrupting the issuing court's management of the underlying litigation, as when that court has already ruled on issues presented by the motion or the same issues are likely to arise in discovery in many districts." *Id.* The prime concern, however, "should be avoiding burdens on local nonparties subject to subpoenas, and it should not be assumed that the issuing court is in a superior position to resolve subpoena-related motions." *Id.*

In support of their motion to transfer, Plaintiffs submit that the issuing court is in the best position to rule on the pending discovery motions because the Underlying Suit is a complex, nationwide antitrust class action involving multiple classes of plaintiffs and has been pending in the Northern District of Illinois for over two years. ECF No. 6 at 6–8. They further assert that any ruling by this Court on the pending motions has the potential to disrupt the Northern District's management of the Underlying Suit in light of the dozens of third-party subpoenas that have been issued to turkey distributers across the country and the likelihood that the parties will be confronted by motions to quash in many districts implicating the same arguments in Labatt's motion. *Id.* While the Court recognizes that "[u]niformity of discovery rulings . . . is critical to achieving fairness to the parties and non-parties," Plaintiffs have not identified a single ruling by the issuing court that would support a finding that this Court's ruling would actually interfere with the management of the Underlying Suit. *In re Nonparty Subpoenas Duces Tecum*, 327 F.R.D. 23, 26 (D.D.C. 2018). Given that the Court's prime concern is "avoiding burdens on local nonparties subject to subpoenas," it will not assume that the issuing court superior position to rule on the subpoena-related motions based on Plaintiffs' mere speculation that inconsistent rulings are *possible*.

In sum, the Court is not persuaded that this case presents the kind of exceptional circumstances that would justify transferring the subpoena-related motions to the issuing court. Accordingly, Plaintiffs' Motion to Transfer (ECF No. 6) is **DENIED**.

## II.     Motion to Quash and Motion to Compel

Based on the parties' previous agreements, the only subpoena-related dispute that remains to be resolved concerns Category 4 of the subpoena, which seeks documents and transactional data for all of Labatt's turkey sales dating back to January 1, 2005. *See* ECF No. 2 at 37–38.

Rule 45(d)(3)(A) of the Federal Rules of Civil Procedure provides that, on timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i)     fails to allow a reasonable time to comply;
(ii)    requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii)   requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv)    subjects a person to undue burden

To avoid imposing any undue burden or expense on the person or entity subject to the subpoena, courts apply the same relevance and proportionality limitations encompassed by Rule 26 to motions to quash in the context of Rule 45. *See, e.g., MetroPCS v. Thomas*, No. 3:18-MC-29-K-BN, 2018 WL 2933673, at *9 (N.D. Tex. June 12, 2018); *Whitley v. Pinnacle Entm't, Inc.*, No. CV 15-595-BAJ-RLB, 2016 WL 6154938, at *2 (M.D. La. Oct. 21, 2016). Rule 26 generally limits discovery to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1).

The Court concludes that the requested sales data is neither relevant to Plaintiffs' claims in the Underlying Suit nor proportional to the needs of the case. While Plaintiffs insist that Labatt's transactional data, documenting both purchase *and* sales transactions for turkey, is critical to measure pass-through to the CIIPP class, Plaintiffs' counsel was unable to describe at the hearing

how their damages model would account for deviations in the Labatt's turkey pricing that were unrelated to changes in the producer's price. ECF No. 14. It appears to the Court that the purchasing data Labatt has agreed to provide, along with the manufacturer's pricing deviations and Labatt's stipulation that "it passes on all manufacturer price increases" are sufficient for the purposes of estimating damages. ECF No. 15 at 4–5.

To the extent the sales data *is* relevant to Plaintiffs' claims, the Court is not convinced that the request from Labatt, a non-party to the action, is proportional to the needs of the case, considering the number of subpoenas seeking similar information from other distributers and the burden of producing over fifteen years of sales data, including potentially sensitive or confidential information concerning Labatt's pricing scheme.

Accordingly, Labatt's motion to quash (ECF No. 2) is **GRANTED** as to the Category of the subpoena, except with respect to the limited categories of sales data that Labatt has already agreed to produce. Insofar as Plaintiffs' motion to compel (ECF No. 14) represents the mirror image of Labatt's motion to quash, it is **DENIED**.

## CONCLUSION

For the foregoing reasons and the reasons stated in open court, the Commercial and Institutional Indirect Purchase Plaintiffs' Motion to Transfer (ECF No. 6) is **DENIED**.

It is **FURTHER ORDERED** that Labatt Food Service, LLC's Amended Motion to Quash (ECF No. 2) is **GRANTED** with respect to Category 4 of the Subpoena, the transactional data concerning its sales of turkey and turkey products, and that the Commercial and Institutional Indirect Purchase Plaintiffs' Motion to Compel is **DENIED**. (ECF No. 14). Should Plaintiffs identify a future order on a discovery dispute by the issuing court that conflicts with this Court's

rulings on the instant motions, the Court will entertain a renewed motion to compel and motion to transfer the motion to the Northern District of Illinois.

**IT IS FURTHER ORDERED** that this cause of action is **CLOSED**.

It is **SO ORDERED**.

**SIGNED** this 1st day of April, 2022.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE